UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| D. LANDSTROM ASSOCIATES, INC., | Case No. 13-CV-2466 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| MIRAMA ENTERPRISES, INC., | |
| Defendant. | |

John P. Boyle and Timothy R. Franzen, MOSS & BARNETT, P.A., for plaintiff.

Erin K. Fogarty Lisle and Barbara P. Berens, BERENS & MILLER, P.A., for defendant.

Plaintiff Darryl Landstrom and Associates, Inc.[1] ("DLA") is a sales representative. Defendant Mirama Enterprises, Inc. ("Mirama") is a manufacturer and importer of household goods. From 2003 until 2013, DLA sold Mirama products to retail stores and was paid a commission by Mirama. The relationship between DLA and Mirama was governed by a series of written contracts, although there were periods during which no written contract was in place. It appears that, during those interim periods, the parties acted consistently with the terms of the most recently expired contract.

Mirama and DLA entered into the last of their series of written contracts in April 2012. *See* Mamao Aff. Ex. 1 [ECF No. 7-1] ("Contract"). That contract provided that it would terminate on March 31, 2013, but also provided that Mirama could terminate the contract earlier

---

[1] Plaintiff refers to itself as "D. Landstrom Associates, Inc." in its complaint, and that name appears on the docket in this case. Both parties, however, refer to plaintiff throughout the other documents filed in this case as "Darryl Landstrom and Associates, Inc."

by giving 30 days written notice to DLA. *Id*. § 9. The contract also provided that the parties could renew it for an additional year "by mutual agreement." *Id.*

March 31, 2013 came and went, the written contract expired, but neither party said a word to the other party about the fact that they no longer had a written contract in place. Instead, DLA continued selling Mirama products as it had under the expired written contract, and Mirama said nothing. On May 31, 2013, however, Mirama notified DLA that it was terminating the parties' business relationship, effective immediately. *See* Compl. ¶ 13 [ECF No. 1-1].

Soon thereafter, DLA sued Mirama in state court. DLA alleged in its complaint that, after the parties' written contract expired on March 31, 2013, the parties entered into an *unwritten* contract — an unwritten contract that obligated DLA to continue selling Mirama products and that obligated Mirama to continue paying commissions on those sales. DLA alleged that Mirama breached the unwritten agreement by failing to pay commissions on sales made after March 31, 2013. DLA also alleged that Mirama violated Minnesota law, both by failing to pay those commissions and by failing to provide adequate notice before terminating the unwritten agreement. *See* Minn. Stat. § 325E.37; Minn. Stat. § 181.145.

Mirama removed the case to federal court, *see* 28 U.S.C. § 1441(a), and now moves to transfer this lawsuit to the United States District Court for the Southern District of California pursuant to the *written* contract's forum-selection clause.[2] Alternatively, Mirama argues that,

---

[2]Mirama originally asked that this case be dismissed pursuant to Fed. R. Civ. P. 12(b)(3). The Supreme Court has recently clarified, however, that dismissal under Rule 12(b)(3) is appropriate "only when venue is wrong or improper" pursuant to federal venue laws. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013) (quotations omitted). A forum-selection clause does not render venue "wrong" or "improper" for purposes of federal venue laws, and so dismissal under Rule 12(b)(3) is unwarranted where a
(continued...)

even if this case is not transferred pursuant to the forum-selection clause in the written contract, the Court should nevertheless transfer the case to California "[f]or the convenience of [the] parties and witnesses . . . ." 28 U.S.C. § 1404(a).

Parties may agree to litigate disputes in a particular forum. The last written contract between Mirama and DLA included the following forum-selection clause:

> All actions or proceedings in any way, manner or respect arising out of or from or related to this Agreement shall be litigated only in courts having sites within the City of San Diego, State of California as to state court actions or federal court actions, which courts shall have exclusive jurisdiction over all such actions or proceedings, and all parties and their transferees hereby consent and submit to the jurisdiction of any local, state or federal court located within said city and state, and all parties and their transferees hereby waive any and all rights that they may have or obtain to transfer or change the venue of any litigation brought by any party hereto against any other party hereto.

Contract § 12.

Forum-selection clauses "are prima facie valid and are enforced unless they are unjust or unreasonable or invalid." *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (quotation omitted). DLA does not argue that forum-selection clause in its last written contract with Mirama was "unjust or unreasonable or invalid." *Id*. Instead, DLA argues that the forum-selection clause does not apply to this lawsuit, because this lawsuit does not "aris[e] out of or from or relate[] to" the written contract. Contract § 12.

---

[2](...continued)
lawsuit is brought in a forum that would be appropriate in the absence of a forum-selection clause. *Id*. at 577-79. The appropriate mechanism for enforcing a forum-selection clause is to move to transfer the case pursuant to 28 U.S.C. § 1404(a). *Id*. at 579-80. Mirama does not dispute that this case can be brought in this District pursuant to 28 U.S.C. § 1391, and it acknowledged at the hearing on its motion that it no longer seeks dismissal of DLA's complaint pursuant to Rule 12(b)(3).

DLA concedes that Mirama paid all commissions due on sales made before the written contract terminated on March 31, 2013.  In fact, DLA takes pains to stress that it is *not* alleging in this lawsuit that Mirama violated any provision of the written contract.  Instead, says DLA, it is alleging only that Mirama violated an *unwritten* contract that came into being on or shortly after April 1, 2013.  *See Webb Candy, Inc. v. Walmart Stores, Inc.*, No. 09-CV-2056, 2010 WL 2301461, at *8 (D. Minn. June 7, 2010)  ("[W]hen parties continue to perform under an expired contract, their conduct can give rise to a new, implied-in-fact contract.").  DLA is vague about the terms of that unwritten contract, except that DLA alleges that the unwritten contract authorized it to continue to sell Mirama products and obligated Mirama to continue to pay commissions on those sales.  According to DLA, however, the unwritten contract did not contain a forum-selection clause.

Mirama disagrees with DLA on all points.  First, Mirama argues that the forum-selection clause in the written contract is indeed broad enough to cover the claims asserted by DLA in this lawsuit.  Second, Mirama argues that no unwritten contract ever arose between the parties after the written contract expired.  And finally, Mirama argues that, even if an unwritten contract arose, that unwritten contract was identical to the written contract, and thus it contained a forum-selection clause requiring disputes to be litigated in California.

As an aside, the Court notes that there is another possibility here:  The written contract may have been renewed for an additional year "by mutual agreement."  Contract § 9.  The written contract did not require that such "mutual agreement" be in writing — and arguably an agreement to renew the written contract was manifested by the fact that, after the written contract expired, both parties pretty much continued to behave as though the contract was still in force.

But, for strategic reasons, neither party is arguing that their last written contract was renewed. If the written contract was renewed, then DLA would be stuck with the forum-selection clause, and DLA does not want to litigate this case in California. And if the written contract was renewed, then Mirama would be obligated to pay commissions to DLA and to give DLA 30 days written notice of an early termination — neither of which it appears to have done. Because neither party contends that the contract was renewed by mutual agreement, the Court will not give that possibility any further attention.

Turning now to the arguments Mirama does make: Mirama first argues that the forum-selection clause in the written contract is broad enough to cover the claims that DLA asserts under the alleged unwritten contract. The Court disagrees. The forum-selection clause in the written contract applies only to "actions or proceedings in any way, manner or respect arising out of or from or related to this Agreement . . . ." Contract § 12. But DLA has gone out of its way to make clear that its claims do *not* "aris[e] out of or from or relate[] to" the written contract. DLA explicitly concedes that Mirama has paid all commissions due and otherwise fulfilled all of its obligations under the written contract. DLA's claims are based on an alleged breach of an *unwritten* contract that did not come into being until after the written contract expired — an unwritten contract that, according to DLA, differs in material respects from its written predecessor.

Mirama, of course, disputes that any such unwritten agreement exists. But Mirama's objection goes to the merits of the underlying dispute. The point remains that, as pleaded, none

of DLA's claims "aris[es] out of or from or relate[s] to" the written contract and thus none of those claims falls within the forum-selection clause contained in that contract.[3]

Mirama also argues that if an unwritten agreement exists, then the terms of that unwritten agreement are identical to the terms of the written contract — including, of course, the forum-selection clause. But Mirama has moved to transfer; it has the burden of proof. *See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (party seeking enforcement of forum-selection clause bears burden of showing that "the claims and parties involved in the suit are subject to the forum selection clause."); *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) ("[T]he party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."). If Mirama wants the Court to transfer this case pursuant to a California forum-selection clause in an unwritten contract, then it must offer evidence that (1) the unwritten contract exists and (2) the unwritten contract contains a California forum-selection clause. But Mirama has introduced no such evidence — undoubtedly because it insists that an unwritten contract does *not* exist. In the absence of evidence of the existence of an unwritten contract containing a California forum-

---

[3] The Court emphasizes that DLA's allegation of a separate, unwritten agreement is entirely plausible, and not merely "artfully drawn pleading . . . to circumvent the otherwise applicable forum selection clause." *Bus. Integration Tech., Inc. v. MuleSoft, Inc.*, No. 4:10CV2185, 2011 WL 4345723, at *6 (E.D. Mo. Sep. 16, 2011). The parties had on prior occasions continued their relationship after the expiration of written contracts. Moreover, DLA suggested at oral argument that the absence of a forum-selection clause is not the only way that the terms of the alleged unwritten agreement differed from the terms of the written contract. For example, DLA asserted that, after the written contract expired, Mirama curtailed DLA's authorized sales region, which would not have been possible if the written contract was still in force.

selection clause, the Court obviously cannot transfer this case to California on the basis of such a clause.

Finally, Mirama argues that, even if no forum-selection clause applies to this lawsuit, the case should nevertheless be transferred to California "[f]or the convenience of parties and witnesses, [and] in the interest of justice . . . ." 28 U.S.C. § 1404(a). But this District is the more convenient forum for litigating this dispute in nearly every relevant respect. "In general, federal courts give considerable deference to a plaintiff's choice of forum . . . ." *Terra Int'l*, 119 F.3d at 695. "This is particularly true where the plaintiff resides in the district in which the lawsuit was filed." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999). DLA is a Minnesota corporation with its principal place of business in Minnesota, *see* Compl. ¶ 1, and it has elected to pursue this lawsuit in Minnesota. DLA has had minimal contact with California. *See* Watt Aff. ¶¶ 15-16 [ECF No. 12]. Conversely, Mirama does extensive business in Minnesota, and Mirama employees — including many of those who are likely to be called to testify — live in and near Minnesota. *Id.* ¶¶ 9-15. DLA's sales region included Minnesota, but not California. *See* Contract § 5. And three of the four counts of DLA's complaint allege violations of Minnesota statutes. *See* Compl. ¶¶ 25-41.

Because the Court cannot find that a forum-selection clause in either a written or unwritten contract applies to this lawsuit, and because nearly all of the other § 1404 factors militate in favor of keeping this lawsuit in Minnesota, Mirama's motion to transfer is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion to transfer venue of defendant Mirama Enterprises, Inc. [ECF No. 4] is DENIED.

Dated: February 3, 2014                              s/Patrick J. Schiltz
                                                                  Patrick J. Schiltz
                                                                  United States District Judge